JOHN A. LESLIE, Respondent, *v.* JACOB LORILLARD et al., Impleaded, etc., Appellants.

In actions by stockholders of corporations, which assail the acts of their directors or trustees, courts will not interfere unless the corporate powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts complained of were fraudulent or collusive and destructive of the rights of the stockholders; mere errors of judgment are not sufficient as grounds for equity interference.

Within the limits of the chartered authority the officers of a corporation have the fullest power to regulate its concerns according to their best judgment.

*It seems* where the provisions of corporate agreements, in restraint of competition, tend beyond measures of self protection and threaten the public good in a distinctly appreciable manner, courts, in the exercise of their equitable powers, may interfere; but should not do so unless the apprehension of danger to the public interests rests on evident grounds.

*It seems* that no contracts are void, as being in general restraint of trade, when they operate simply to prevent a party from engaging or competing in the same business.

*It seems*, also, that stockholders may arrest, by suit, a course of dealing which will divert the assets of a corporation to purposes not authorized by its charter, or an employment of its statutory powers for the accomplishment of purposes not within the scope of their institution.

Plaintiff's complaint alleged, in substance, the following facts: In 1873 the O. D. S. Co. of New York, a corporation of that state, was engaged in running a line of steamships between New York and certain ports in

Virginia. Defendant L. was president and director of another steamship company, the L. S. Co., and had entire control of it, and, for the purpose of extorting money from said O. D. S. Co. and of deceiving its directors and causing them to believe that a formidable opposition would be established against it, threatened and did cause the L. S. Co. to put on and run a line of steamships in opposition to the O. D. S Co., and continued to run them, at his own expense and at a great loss, until his efforts were successful in deceiving the officers of said company, and thereupon it entered into an agreement with L. and his company, by which, in consideration of a monthly payment to be made by it to them, they agreed to discontinue running their vessels on said route, and that they would not charter or sell the vessels to be used thereon. In 1875 defendant, the O. D. S. Co. of Delaware, was organized, of which company plaintiff is a stockholder. It succeeded to the business and assumed the contracts of the New York company, the latter company having assigned to it its property. The new company continued making payments to L. under the said contract until 1878, when a new contract was entered into, by which the former one was canceled, in consideration of the payment of a gross sum by the new company, and its agreement to make certain monthly payments for a term of five years; L. and his company agreeing not to run or to be in any way interested in running steamships in opposition to the new company. The latter company made all the payments called for under the new contract up to August, 1881, when further payment was restrained in an action brought by plaintiff. In 1884 plaintiff requested the new company to make no more payments and to commence an action for the cancellation of the contract and to recover back the payments made under it, which request was refused. L. commenced an action in February, 1884, to recover the payments due under the second contract, which the Delaware company did not intend to defend. Plaintiff asked for an injunction restraining said company from making any further payments, and L. from prosecuting his action for the cancellation of the contract, also for repayment by L. of all moneys received. On demurrer to the complaint by L. and the L. S. Co., *held*, that it did not state facts constituting a cause of action as against them; that the contracts set forth were in the power of the corporations to make, were not void as unlawfully restraining trade or assailable on any grounds of public policy; and as no collusion was alleged between the New York company and the defendants demurring; and as to the second contract, there was no averment of any deception or collusion, the complaint was not sustainable on any ground of fraud; also that if the action was to be considered as a controversy between a stockholder of the O. D. S. Co. and its directors or other stockholders, it was one with which the defendants demurring were not concerned, and into which they should not be brought.

(Argued June 19, 1888; decided October 16, 1888.)

APPEAL by defendants Lorillard and the Lorillard Steamship Company from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 14, 1888, which affirmed an interlocutory judgment entered upon an order overruling a demurrer to plaintiff's complaint.

The averments of the complaint are substantially as follows :

The plaintiff is a stockholder of the defendant, the Old Dominion Steamship Company of Delaware. In the year 1873 the Old Dominion Steamship Company of New York was a corporation organized under the laws of New York, and was engaged in the business of running a line of steamships between the port of New York and certain ports in the state of Virginia. The defendant, the Lorillard Steamship Company, was also a New York corporation organized for the business of navigating the ocean by steamships. The defendant Lorillard was a director and the president of the Lorillard Company, and had entire control of it; the other directors, except one who was a brother-in-law, being his clerks and employes. In and prior to the summer of 1873, said Lorillard, "for the purpose of extorting large sums of money from the Old Dominion Steamship Company of New York, stated to the officers of said corporation that the said Lorillard Steamship Company intended to put on and run a line of steamships, between the ports above mentioned, in opposition to the steamships of said Old Dominion Steamship Company; and to deceive the officers of said company, and cause them to believe that a formidable opposition would be established against said company, said Lorillard caused said Lorillard Steamship Company to lease docks at Norfolk and other places, and to hire agents and servants at different points; and in or about the month of October, 1873, said Lorillard caused said Lorillard Steamship Company to put on and run a line of steamships between said ports in opposition to said Old Dominion Steamship Company of New York." Said Lorillard continued to run his steamships at great loss,

and at his own expense, until his efforts were successful in deceiving the officers of the Old Dominion Company into the belief that a powerful opposition line had been established; and in January, 1874, an agreement, running between the Old Dominion Company and Lorillard and his company, was signed by the president of each company, and by Lorillard for himself, by the terms of which, in consideration of a monthly payment to him, Lorillard and his company agreed to discontinue running their vessels, or any others, between the ports mentioned, and that they would not charter or sell the vessels to any other company or persons to be used on that route, and would not become in any way interested in the running of steamships between those places; that, in February, 1875, the defendant, the Old Dominion Steamship Company of Delaware, was formed under the laws of that state, and succeeded to the business of the New York Company, and "became vested with the property of said last-named company, which was duly conveyed and assigned to it and subjected to the liabilities and contracts of said company." This new company continued making payments to Lorillard under the contract mentioned until February, 1878, when disputes arose between the various parties and a new contract was entered into in October, 1878. By this latter contract the previous contract was canceled, and in consideration of the payment of a gross sum of money and of certain monthly payments, to be continued through five years from February, 1879, Lorillard and his company again agreed not to run, or to be in any way interested in the running of steamships between the ports named. The Delaware Company made all the payments called for under the second agreement up to August, 1881, when further payment of the monthly subsidies was enjoined in an action brought by this plaintiff. Plaintiff alleges that prior to the commencement of this action, and in February, 1884, he requested the Delaware Steamship Company to pay no more moneys and to commence an action for the cancellation of the contract and for the recovery back of the moneys paid under the contracts.

This demand was in a letter, and the reply to it contains a resolution of the board of directors refusing to take the action requested.    Plaintiff also alleges the commencement of an action in February, 1884, by Lorillard against the Delaware Company, to recover the monthly payments, payable under the contract from and after August, 1881, and that the Delaware Company did not intend to defend it.

The relief demanded is an injunction against the Delaware Company's making payments under the contract; against Lorillard from prosecuting his action; the cancellation of the contract and the repayment by Lorillard of all moneys received.

Defendants Lorillard and the Lorillard Steamship Company demurred to the complaint on the ground that it did not state facts constituting a cause of action.

*Asa Bird Gardiner* for appellants.    To entitle the plaintiff to invoke the equitable relief sought for by this action, he should positively allege that he has not acquiesced or participated in the alleged wrongful action of the corporation, because a *cestui que trust* who has acquiesced in a breach of trust is barred.    (*Boerum* v. *Schenck*, 41 N. Y. 182, 200; *Burt* v. *British Nat. Life Assoc.*, 4 De G. & J. 158, 174.)    The two alleged causes of action not having been separately stated, but wrongly united in one count, the defendants still have the right to demur, as if they were separately stated.    (*Wiles* v. *Suydam*, 64 N. Y. 173.)    The contract, January 31, 1874, having been executed, if the plaintiff believes he or the Old Dominion Steamship Company of Delaware has been defrauded thereby, he or it must rely upon his or its remedy in tort and sue for damages for the wrong sustained.    (Sir Wm. R. Anson on Law of Cont. [Am. ed., 1880] 175; *Booth* v. *F. & M. Nat. Bk.*, 63 Barb. 457; *House* v. *Cooper* 30 id. 157; *People* v. *Ravenswood, etc., T. B. Co.*, 20 id. 518.)    The action under contract "A" is not for a rescission, but a legal action; while that under contract "B" is for a rescission and equitable relief. They are not properly unitable in the same complaint.    (*People* v. *A. & S. R. R. Co.*, 57 N. Y. 161; *Coster* v. *N. Y. &*

*E. R. R. Co.*, 6 Duer, 43; *Lamport* v. *Abbott*, 12 How. Pr. 340.) As the complaint does not show when the plaintiff became a stockholder in the Old Dominion Steamship Company of Delaware, nor when he first became informed of the execution of contract " B," nor that he was not a consenting party thereto, either as shareholder or director, it is to be presumed, in the absence of declarations to the contrary, and by reason of the actual delay in bringing this action, that he consented to or acquiesced in the execution of that contract, although now pretending that it was illegal. (*Gregory* v. *Pachett*, 33 Beav. 602; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Insurance Co.* v. *McCain*, 96 id. 84; *Hotel Co.* v. *Wade*, 97 id. 13; *Perkins* v. *Portland, etc., R. R. Co.*, 47 Me. 591; *Goodin* v. *Cin., etc., Canal Co.*, 18 Ohio St. 169; *Attorney General* v. *Del., etc., R. R. Co.*, 27 N. J. Eq. 1; *Kent* v. *Jackson*, 14 Beav. 367; *Fulden* v. *Lancashire, etc., R. Co.*, 2 De G. & Sm. 531; *Bullock* v. *Chapman*, Id. 673; Field's Ultra Vires [ed. 1881], 230, 585; *State* v. *Van Horn*, 7 Ohio St. 332; *Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 158; *Town of Bennington* v. *Park*, 50 Vt. 178, 209; *Burlington, etc., R. R. Co.* v. *Stewart*, 39 Iowa, 267; *Patterson* v. *Baker*, 6 T. & C. 76; *Samuel* v. *Holliday*, 1 Woolw. 400; Morawetz on the Law of Private Corp. [Little & Brown's ed., 1882] § 80; *United States* v. *Oakland*, 104 U. S. 450; *Fox* v. *Harbottle*, 2 Hare's Ch. 488; *Mozley* v. *Alston*, 1 Phillip's Ch. 790; *Gray* v. *Lewis*, Law Rep., 8 Ch. 1035; *McDougall* v. *Gardiner*, L. R., 1 Ch. Div. 21; *Detroit* v. *Dean*, 106 U. S. 542; *Dimpfell* v. *O. & M. R. R. Co.*, 110 id. 209.) The complaint must show how the Old Dominion Steamship Company of Delaware became owner, whether by purchase, operation of law, or how, otherwise, and the fact should be stated. (*Russell* v. *Clapp*, 7 Barb. 482; *Bently* v. *Jones*, 4 How. Pr. 202; *McMurry* v. *Thomas*, 5 id. 14; *Parker* v. *Totten*, 10 id. 233; *Thomas* v. *Desmond*, 12 id. 321; *Freeman* v. *Fulton Fire Ins. Co.*, 14 Abb. 398.) No action lies to recover money paid on an illegal contract. (Smith's Law of Cont. [ed. 1874] 274; *McKinnell* v. *Robinson*, 2 M. & W.

441; *Howson* v. *Hancock*, 8 T. R. 575; *Browning* v. *Morris*, Cowp. 790; *Lubbock* v. *Potts*, 7 East, 449.) There is no statute prohibiting these contracts nor can they be classed under the objects of statuory prohibition where penalties are prescribed. (Pollock on Prin. Eng. Law of Cont. [ed. 1878] 342–345; *Brown* v. *Duncan*, 10 B. & C. 43; *Cope* v. *Rowlands*, 2 M. & W. 149; *Smith* v. *Mawhood*, 14 id. 463; *Pangborne* v. *Westlake*, 36 Iowa 546.) There is no definite rule of common law of which either of these contracts may be urged a breach of. (Anson on Prin. Law of Cont. [Am. ed. 1880] 174; *Allen* v. *Rescous*, 2 Lev. 174; *Clay* v. *Yates*, 1 H. & N. 73; *Malalien* v. *Hodgson*, 16 Q. B. 689; *Griswold* v. *Waddington*, 15 Johns. 57; *Davis* v. *Arteelye*, 3 Hill [S. C.] 170.) Deceit which does not deceive is not fraud. (*Horsfall* v. *Thomas*, 1 H. &. C. 90; *Smith* v. *Hughes*, 6 Law Rep., Q. B. 605; *Morris Canal Co.* v. *Everett*, 9 Paige, 168.) In order to rescind a contract on the ground of fraud, the rescission must be claimed within a reasonable time, promptly upon information had of the alleged fraud, or the right is lost by acquiescence. (*Crutchfield* v. *Stanfield*, 12 Rep. 443 [A. D. 1881]; *Schiffer* v. *Deitz*, 83 N. Y. 300; *Dep. & Gen. Life Ass. Co.* v. *Ayscough*, 6 E. & Bl. 761; *Clarke* v. *Dickson*, 27 Law J., Q. B. 223; *Scholey* v. *Cent. R. Co. of Venz.*, 9 Law Rep., Eq. Cas. 266n; Chitty on Cont. [11th Am. ed.] 1037.) The grounds of this action for affirmative judgment on pretense of "illegality" must be found, if at all, under the subdivision that the agreements are contrary to public policy. (*Tool* v. *Norris*, 2 Wall. 45; *Jenkins* v. *Hooker*, 19 Barb. 435; *Hager* v. *Catlin*, 1 Week. Jur. [N. Y. Sup. Ct.] 607; *Chandler* v. *Johnson*, 39 Ga. 89; *Gray* v. *Wilson*, 4 Watts 39.) The contract of October 29, 1878, must receive such a construction as will make it lawful, operative, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties. (*Sterry* v. *Clifton*, 9 Com. Bench Rep. 110; *Harrington* v. *Kloprogge*, 4 Doug. 5; *Shore* v. *Wilson*, 9 C. & F. [H. of L.] 397; *Boyd* v.

*Moyle*, 2 C. B. 644; *Russell* v. *Phillips*, 14 Q. B. 891; *Broome* v. *Batchelder*, 1 H. & N. 255; *Mare* v. *Charles*, 5 E. & Bl. 978; *Braunstein* v. *Accidental Death Ins. Co.*, 1 Best & Smith, 782; *Jones* v. *Gibbons*, 8 Excheq. 922; *Dallman* v. *King*, 4 Bing. N. C. 105; Leake's Dig. Law of Contracts, 723; *Lloyd* v. *London, Chatham & D. R. R. Co.*, 2 De G., J. & S. 568; *Raphael* v. *Thames Valley R. Co.*, 36 Law Jour. chap. 209; *Printing, Registering Co.* v. *Sampson*, 44 id. chap. 705.) It belongs to the class of negative covenants only in partial restraint of trade, if at all, and the limitation is reasonable. Courts of equity constantly enforce such covenants by injunction. (Kerr's Law of Injunc. [ed. 1880] 399; *Amedon* v. *Gannon*, 6 Hun, 386.) To invoke public policy against such a covenant, it must be in total restraint of trade to all points and all places. (*Mitchell* v. *Reynolds*, 1 P. Wms. 181; *Chesman* v. *Nainby*, 2 Strange, 739; *Wickens* v. *Evans*, 3 You. & Jer. 318; *Mallan* v. *May*, 11 M. & W. 653; *Avery* v. *Langford*, Kay, 663.) Such restraints upon trade, so far from being injurious to trade, are in many cases necessary for the protection of those who are engaged in it. Instead of cramping, they encourage the employment and the promotion of industry. (*Homer* v. *Ashford*, 3 Bing. 326; *Mallan* v. *May*, 11 M. & W. 665; *Tallis* v. *Tallis*, 1 El. & Bl. 391; *Muniford* v. *Gething*, 7 Com. Bench [N. S.] 305; *Leather Cloth Co.* v. *Lorsout*, 9 Eq. 354; *Davis* v. *Mason*, 5 Term Rep. 118; *Williams* v. *Williams*, 2 Swan, 253; *Hayward* v. *Young*, 2 Chitty, 407; *Sander* v. *Hoffman*, 64 N. Y. 648; *McClurg's Appeal*, 58 Penn. 51; *Butler* v. *Burleson*, 16 Vt. 176; *Beard* v. *Dennis*, 16 Ind. 200. *Palmer* v. *Graham*, 1 Pars. Eq. Cas. 476; *Alger* v. *Thatcher*, 19 Pick. [Mass.] 51; *Mott* v. *Mott*, 11 Barb. 127; *Whitney* v. *Slayton*, 40 Maine, 224; *Lange* v. *Werk*, 2 Ohio [N. S.] 519; *Noble* v. *Bates*, 7 Cow. 307; *Bowser* v. *Bliss*, 7 Blackf. 344; *Marter* v. *Babcock*, 23 Barb. 633; *Chappel* v. *Brockway*, 21 Wend. 158; *Ross* v. *Sadgebeer*, 21 id. 106; *Alcock* v. *Gilberton*, 5 Duer, 76.) Contracts restraining the exercise of a trade in particular localities, where there is a reasonable ground for the restriction

are valid. The court will not inquire into the adequacy of the consideration. (*Curtis* v. *Gokey*, 68 N. Y. 300, 304; *Homer* v. *Graves*, 7 Bing. 743; *Tallis* v. *Tallis*, 1 El. & Bl. 391; *Dendy* v. *Harrison*, 11 Excheq. 194; *Alsopp* v. *Wheatcroft*, 15 Eq. 64; *Jarvis* v. *Peck*, 10 Paige, 118; *Thomas* v. *Miles*, 3 Ohio St. 274; *Dean* v. *Emerson*, 102 Mass. 480; *Hitchcock* v. *Coker*, 6 Adolph. & Ellis, 438; *Pemberton* v. *Vaughan*, 10 Q. B. 87; *Elves* v. *Crofts*, 10 Com. Bench, 241; *Mumford* v. *Gething*, 7 id. [N. S.] 305; *Hastings* v. *Whittey*, 2 Excheq. 615; *Ward* v. *Byrne*, 5 M. & W. 561; *Lawrence* v. *Kidder*, 10 Barb. 653; *Buren* v. *Guy*, 4 East, 190; *Howard* v. *Woodward*, 34 L. J., chap. 47; *Avery* v. *Langford*, Kay Ch. 663; *Turner* v. *Evans*, 2 M. & G. 740; *Williams* v. *Williams*, 2 Swan, 253; *Leighton* v. *Wales*, 3 M. & W. 545, 551; Pollock on Prin. Eng. Law of Contract [ed. 1878] 315; *Dunlop* v. *Gregory*, 10 N. Y. 241; *Wright* v. *Rider*, 36 Cal. 353; *Archer* v. *Marsh*, 6 Ad. & El. 959; *Pilkington* v. *Scott*, 15 M. & W. 657; *Sainter* v. *Ferguson*, 7 Com. Bench, 716; *Gravely* v. *Barnard*, 18 Eq. Rep. 521; *Mallan* v. *May*, 11 M. & W. 665; *Peirce* v. *Fuller*, 8 Mass. 223; *Cal. S. N. Co.* v. *Wright*, 6 Cal. 258; *Chappel* v. *Brockaway*, 21 Wend. 157, 160; *Ross* v. *Sadgebeer*, id. 166; *Weller* v. *Hersee*, 10 Hun, 433; *Hedges* v. *Paquett*, 3 Oregon, 77; *Steel* v. *Westfall*, 25 Hun, 1.) Presumably, on their faces, the contracts were made with care and deliberation, in good faith and for the best interests and benefit of the companies. There is no allegation to the contrary. (*Bigelow* v. *Benedict*, 70 N. Y. 202.) Everything must be presumed to have been lawful and consistent with the constitution of the company, which is not expressly shown to have been unlawful or inconsistent therewith. (*Fox* v. *Harbottle*, 2 Hare's Ch. 502.) The law will not presume a contract illegal or against public policy, and so void, when it is capable of a construction which will make it lawful and valid. (*Ormes* v. *Dauchy*, 82 N. Y. 448; *State Board of Agriculture* v. *Citizens' Railway Co.*, 47 Ind. 407; *Marie* v. *Garrison*, 83 N. Y. 14; *Miner's Dutch Co.* v. *Yellerbach*, 37 Cal. 543; Brice on Ultra Vires

[ed. 1887] 544; *Legrand* v. *Man. Mer. Assn.*, 80 N. Y. 638.)
Even in actual *ultra vires* contracts the tendency of courts
throughout the country, based upon the strongest and plainest
principles of justice, has been to enforce contracts against cor-
porations, although in entering into them they have exceeded
their chartered powers, where they have received the considera-
tion and benefit of their contracts. (Am. Law Review, July,
1879, art. *ultra vires ; De Groff* v. *Am. Linen Thread Co.*,
21 N. Y. 124 ; *Bissell* v. *M. S. & U. I. R. R. Co.*, 22 id. 258 ;
Green's Brice's Ultra Vires, 735 ; *Parish* v. *Wheeler*, 22 N. Y.
494 ; *Whitney Arms Co.* v. *Barlow*, 38 N. Y. Sup. Ct. 555 ;
*Mott* v. *U. S. Trust Co.*, 19 Barb. 568 ; 3 Sandf. 161 ; *Moss* v.
*Rossie Lead Mining Co.*, 5 Hill 137 ; 63 N. Y. 70 ; *Bradley*
v. *Ballard*, 53 Ill. 413 ; *Bargate* v. *Shortridge*, 5 H of L.
Cas. 297 ; 2 Kent [1st ed.] 181, note ; *Zabriskie* v. *C. C. &*
*C. R. R. Co.*, 23 How. [U. S.] 397 ; *Carey* v. *Cleveland &*
*Toledo R. R. Co.*, 29 Barb. 35 ; *Argenti* v. *San Francisco*,
16 Cal. 225 ; *McCleur* v. *Man. & L. R. Co.*, 13 Gray, 124 ;
*Chapman* v. *R. & L. R. R. Co.*, 6 Ohio, 137 ; *Chapman* v.
*Mut. Fire Ins. Co.*, 32 N. H. 297 ; *Railroad Co.* v. *Howard*,
7 Wall. 413 ; *East St. Louis* v. *East St. Louis Gas-Light &*
*Coke Co.*, 12 Ill Sup. Ct. [1881] 206 ; *Steam Nav. Co.* v.
*Weed*, 17 Barb. 378 ; *Sackett's Harbor Bk.* v. *Lewis Co. Bk.*,
11 id. 213 ; *Suydam* v. *Morris Canal and Banking Co.*,
5 Hill, 491 ; *S. C.*, 6 id. 217 ; *Potter* v. *Bk. of Ithaca*, 5 id.
490 ; *State of Ind.* v. *Woram*, 6 id. 37 ; *Chester Glass Co.*
v. *Dewey*, 16 Mass. 94 ; *Palmer* v. *Lawrence*, 3 Sandf. 170 ;
*Silver Lake Bk.* v. *North*, 4 Johns. Ch. 373 ; *Bushnell* v.
*Chautauqua Co. Nat. Bk.*, 10 Hun, 382 ; *Railway Co.* v.
*McCarthy*, 96 U. S. Rep. 267 ; *Union Water Co.* v. *Mur-
phy's Flat Fluming Co.*, 22 Cal. 620 ; *Morris R. R. Co.* v.
*R. R. Co.*, 29 N. J. Eq. 542 ; *San Antonia* v. *Mehaffy*, 96
U. S. 312 ; *Hitchcock* v. *Galveston*, 9 id. 351 ; *State Board
of Agriculture* v. *Citizens' Street Railway Co.*, 47 Ind.
407 ; *Gold Mining Co.* v. *Nat. Bk.* 96 U. S. 640 ; *National
Bk.* v. *Matthews*, 98 id. 621 ; *R. & B. R. R. Co* v. *Proctor*,
29 Vt. 93 ; *Whitney* v. *Wyman*, 101 U. S. 396 ; Angell &

Ames on Corp, § 804 and note; *Daniels* v. *Tearney,* 102 U. S. 420; *Jones* v. *Guarantee Co.,* 101 id. 628; *Lewis* v. *Lyons,* 13 Ill. 117; *Sturgis* v. *Knapp,* 31 Vt. 63; *Vt. & Can. R. Co.* v. *Vt. Cen. R. R. Co.,* 34 id. 2; *Town of Bennington* v. *Park,* 50 id. 178; *Whitney* v. *First Nat. Bk., etc.,* 50 id. 388; *Perkins* v. *Portland, etc., R. R. Co.,* 47 Me. 573; *Attleborough Nat. Bk.* v. *Rogers,* 125 Mass. 339; *Nat. Pemberton Bk.* v. *Porter,* 125 id. 333; *Oil Creek etc., R. R. Co.* v. *Penn. Trans. Co.,* 83 Penn. St. 160; *Southern Life Ins. Co.* v. *Lanier,* 5 Fla. 110; *Kneeland* v. *Gilman,* 24 Wis. 39; *Germantown Farmers' Mut. Ins. Co.* v. *Dhein,* 43. Wis. 420; *Union Mining Co.* v. *Rocky Mt. Nat. Bk.,* 2 Col. 256; *Chicago Building Soc.* v. *Crowell,* 65 Ill. 459; *Littlewort* v. *Davis,* 50 Miss. 403; *Argenti* v. *San Francisco* 16 Cal. 264; *Eastern Counties R. Co.* v. *Hawkes,* 35 Eng. L. & Eq. Rep. 31.)   Power to make contracts and acquire and transfer property is conferred upon such corporations by the laws of the State, to the same extent as that enjoyed by individuals.  (*Railroad Co.* v. *Howard,* 7 Wall. 412.)   Long  acquiescence  amounts  to  an  equitable estoppel, and will validate an invalid agreement, even where it was *ultra vires.*  (*Pneumatic Gas Co.* v. *Berry,* 113 U. S. 327; *Rolling Mill* v. *St. Louis, etc., R. R. Co.,* 120 id. 256, 259; *Twin Lick Oil Co.* v. *Marbury,* 91 id. 592; *Badger* v. *Bader,* 2 Wall. 87; *Harwood* v. *R. R. Co.,* 17 id. 78; *Marsh* v. *Whitmore,* 21 id. 178; *Vigers* v. *Pike,* 8 Clark & Fin. 650; *Wentworth* v. *Lloyd,* 32 Beav. 467; *Follansbee* v. *Kilbreth,* 17 Ill. 522; *Gold Mining Co.* v. *Nat. Bk.,* 96 U. S. 640; *Law* v. *Cross,* 1 Black. 533.)

*Thomas S. Moore* for respondent.   The plaintiff, as a stockholder of the Old Dominion Steamship Company of Delaware, has a right, that company having refused to do so upon request, to bring an action to recover for the benefit of that company any of its assets (and the claim upon Lorillard for money illegally paid him by said company under the first contract is

an asset), and to restrain the payment of its funds under an illegal contract. (Green's Brice [2d Am. ed.] 645, note *a*, 658; *Dodge* v. *Woolsey*, 18 How. 331; *Davenport* v. *Dows*, 15. Wall. 626; *Robinson* v. *Smith*, 3 Pai. 222; *Greaves* v. *Gouge*, 69 N. Y. 154; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 96 id. 44; *Brinckerhoff* v. *Bostwick*, 88 id. 56; *Sheridan* v. *Sheridan Electric Light Co.*, 38 Hun, 396; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 258; *Colles* v. *Trow City Directory Co.*, 11 Hun, 397; *Belmont* v. *Erie R. Co.*, 52 Barb. 637; *Gray* v. *N. Y. & Vir. S. S. Co.*, 3 Hun, 383; *Blatchford* v. *N. Y. & N. H. R. R. Co.*, 5 Abb. 277; *Watson* v. *Harlem & N. Y. Nav. Co.*, 52 How. Pr. 348; *Fisk* v. *Chicago & Rock Island R. R. Co.*, 36 id. 20.) It is sufficient that plaintiff was a stockholder when the action was brought; it is not necessary to allege that he was a stockholder when the acts complained of were committed. (*Ramsey* v. *Gould*, 57 Barb. 398; *S. C.*, 9 Abb. Pr. [N. S.] 342; *Young* v. *Drake*, 8 Hun, 64.) The contract between the defendants is not only *ultra vires*, but illegal, as preventing competition and tending to create a monopoly, and the directors of the steamship company had no power to use the funds of the company for such a purpose. (*Morris Run Coal Co.* v. *Barclay Coal Co.*, 68 Penn. 173; *Atcheson* v. *Mallon*, 43 N. Y. 149; *Watson* v. *H. & N. Y. Nav. Co.*, 52 How. Pr. 348; *Hooker* v. *Vanderwater*, 4 Den. 349; *Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558; *Stanton* v. *Allen*, 5 Den. 434; *Saratoga Co. Bank* v. *King*, 44 N. Y. 87; *State* v. *Hartford & N. H. R. R. Co.*, 29 Conn. 538; *Colman* v. *Eastern Co. R. Co.*, 10 Beav. 1; *South Yorkshire R. Co.* v. *Great Northern R. Co.*, 9 Exch. 55, 84; *Hartford & N. H. R. R. Co.* v. *N. Y., N. H. R. R. Co.*, 3 Robt. 411, 415; *Colles* v. *Trow Directory Co.*, 11 Hun, 397; *Davis* v. *Old Colony R. R. Co.*, 131 Mass, 258, 259; *Bissell* v. *Mich. S. & N. I. R. R. Co.*, 22 N. Y. 269; *Whitney Arms Co.* v. *Barlow*, 63 id. 62; *Woodruff* v. *Erie R. Co.*, 93 id. 618, 619.) The Old Dominion Steamship Company had no power to enter into contract "B," which was illegal, and its directors have no right to misapply the funds of the cor-

poration by making payments under that contract. (*Davis* v. *Old Colony R. R. Co.*, 131 Mass. 258 ; *Arnot* v. *Pittson & Elmira Coal Co.*, 68 N. Y. 558.) The complaint not only alleges a demand upon the company and a refusal by it, but it gives the correspondence between the parties and a copy of the resolution of its board of directors making such refusal, and this is sufficient. (*Greaves* v. *Gouge*, 69 N. Y. 154.)

GRAY, J. The defendants Lorillard and the Lorillard Steamship Company have demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. We are thus required to examine this pleading and to see whether, allowing to its averments all the force and truth such a ground of demurrer concedes, it may be sustained as the foundation of an action for equitable relief.

Our decision of the question will necessarily turn upon the validity of the contracts which are set forth. An extended discussion of the principles controlling the making and enforcement of corporate contracts is unnecessary. By frequent adjudications certain principles are well settled and have become familiar.

The contracts of corporations are said to be *ultra vires* when they involve some adventure or undertaking not within the scope of their charter, which is their rule of corporate action. In the granting of charters, the legislature is presumed to have had in view the public interest; and public policy is (as the interest of stockholders ought to be) concerned in the restriction of corporations within chartered limits, and a departure therefrom is only deemed excusable when it cannot result in prejudice to the public or to the stockholders. As artificial creations, they have no powers or faculties, except those with which they were endowed when created ; and when, as is frequently the case, they act in excess of their powers, the question will be : Is the act prohibited as prejudicial to some public interest, or, is it an act not unlawful in that sense, but prejudicial to the stockholders? The rule, however, is well settled that the plea of *ultra vires* should not prevail when it

would not advance justice, but, on the contrary, would accomplish legal wrong.

In suits between the corporation and strangers dealing with it, the question is whether the act is one the corporation is not authorized to perform under any circumstances; or one that it may perform for some purposes or under certain conditions. In the first case it is *ultra vires* and there can be no recovery; because the party dealing with the corporation is bound to know, from the law of its existence, that it has no power to perform it. In the second case, the issue will turn upon whether the party dealing with it is aware of the intention to perform the act for some unauthorized purpose, or whether the attendant circumstances justify its performance. In actions by stockholders, which assail the acts of their directors or trustees, courts will not interfere unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders. Mere errors of judgment are not sufficient as grounds for equity interference; for the powers of those entrusted with corporate management are largely discretionary.

Testing by these rules the case made by plaintiff in his complaint, we find, in considering that pleading, that the only respect in which the contracts in question could be viewed as prejudicial to public interests, and, therefore, become the subject of judicial condemnation, as being against public policy, would be that they were in restraint of competition and tended to create a monopoly. The tendency of modern thought and of the decisions, however, has been no longer to uphold in its strictness the doctrine which formerly prevailed in respect of agreements in restraint of trade. The severity with which such agreements were at first treated became more and more relaxed by exceptions and qualifications. This change was gradual and may be considered, perhaps, as due mainly to the growth and spread of the industrial activities of the world, and to enlarged commercial facilities, which render such agreements less dangerous as

tending to create monopolies. The earlier doctrine, of course, obtained in respect of agreements between individuals. The limitation which became imposed was, that the agreement should operate as to a locality and not as to the whole land. In later times the danger in such agreements seems only really to exist when corporations are parties to them, for their means and strength would better enable them to buy off rivalry and to create monopolies.

The object of government, as interpreted by the judges, was not to interfere with the free right of man to dispose of his property or of his labor; it was to guard society, of which he was a member, from the injurious consequences of his agreement; whether they would arise from his own improvidence in bargaining away his means of gaining a livelihood, or in the deprivation to society of the advantages of competition in skilled labor. At the present day there is not that danger, or at least it does not seem to exist to an appreciable extent, except, possibly, as suggested in the case of corporations. In their supervision and in their restriction within the limits of their chartered powers, the government and the public are directly interested. Corporations are great engines for the promotion of the public convenience, and for the development of public wealth, and, so long as they are conducted for the purposes for which organized, they are a public benefit; but if allowed to engage, without supervision, in subjects of enterprise foreign to their charters, or if permitted unrestrainedly to control and monopolize the avenues to that industry in which they are engaged, they become a public menace; against which public policy and statutes design protection.

When, therefore, the provisions of agreements in restraint of competition tend beyond measures for self protection and threaten the public good 'in a distinctly appreciable manner, they should not be sustained. The apprehension of danger to the public interests, however, should rest on evident grounds, and courts should refrain from the exercise of their equitable powers in interfering with and restraining the conduct of the affairs of individuals or of corporations, unless

their conduct, in some tangible form, threatens the welfare of the public. The doctrine relating to contracts in restraint of trade has been elaborately discussed in a careful opinion of Andrews, J., in the recent case of the *Diamond Match Company* v. *Roeber* (106 N. Y. 473). Under the authority of that case, it may be said that no contracts are void as being in general restraint of trade, where they operate simply to prevent a party from engaging or competing in the same business. It is there said (p. 483): "To the extent that the contract prevents the vendor from carrying on the particular trade, it deprives the community of any benefit it might derive from his entering into competition. But the business is open to all others and there is little danger that the public will suffer harm from lack of persons to engage in a profitable industry. Such contracts do not create monopolies. They confer no special or exclusive privileges."

Under the doctrine of that case, it is difficult to see how the contracts, which are complained of here, are open to the objection suggested by counsel. Regarded only in the light of what they tended to effect, these agreements removed a business rival, whose competition may have been deemed dangerous to the success or maintenance of the business of the Old Dominion Company. They could not, of course, exclude all competition in the business, but would in that particular case.

How, then, is the result different from the simpler case of the sale by an individual of his business and his right to conduct it in a particular part of the land? The doctrine held by this court in *Diamond Match Company* v. *Roeber* (*supra*), should control in the case at bar, and these contracts, therefore, cannot be considered objectionable on the ground that they restrained competition. Whether competition in this particular business would be a public benefaction, or its restraint a source of prejudice, we are unable, of course, to judge. I do not think that competition is invariably a public benefaction; for it may be carried on to such a degree as to become a general evil.

The conclusion at which we have arrived, as to these contracts, would seem to dispose of this case and make further consideration useless; for the plaintiff makes them the basis of his action. The relief he has sought is the prevention of a misappropriation of corporate funds by the officers of the company, and the annullment of these contracts as obtained by deception.

We do not question the right of stockholders to complain of any diversion of the capital and assets to purposes not authorized by the charter, and to arrest by suit an unauthorized course of dealing which results in such diversion. The powers of a court of equity may be put in motion at the instance of a single stockholder, if he can show that the corporation is employing its statutory powers for the accomplishment of purposes not within the scope of its institution. (Angell & Ames on Corporations, § 393.) But this is not such a case. The contracts were within the power of the corporation to make, and if they were free from the taint of fraud and were not procured to be made by some collusion or conspiracy, then they are binding upon the company and constitute an obligation which the officers must discharge.

If this is a controversy between a stockholder and the directors, or other stockholders, who are deemed to be acting destructively towards the property in which he has an interest, it is one with which these defendants are not concerned and into which they should not be brought. They dealt with the directors, in respect of matters which were within the discretionary powers of a board of management. If it were charged that some fraud was practiced by Lorillard, to which the officers of the New York company were parties, and that they had colluded with him, the equitable jurisdiction of the court might be invoked by the plaintiff; for fraud vitiates all contracts, and it is a general rule that in cases of fraud, or where the charge is of conspiracy or of a fraudulent combination, equity has concurrent jurisdiction with the law and will give redress.

But in every case the exercise of jurisdiction in equity rests

in the sound discretion of the court, and depends upon the special circumstances disclosed. (*McHenry* v. *Hazard*, 45 N. Y. 580; *Dodge* v. *Woolsey*, 18 How. 331.) In *Hawes* v. *Oakland* (104 U. S. 450), MILLER, J., asserted the doctrine established in the case of *Dodge* v. *Woolsey* to be, that, to enable a stockholder in a corporation to sustain in a court of equity, in his own name, a suit founded on a right of action existing in the corporation itself, there must exist as a foundation for the suit, "some action or threatened action of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction, completed or contemplated by the acting managers in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest in a manner destructive of the corporation itself, or of the rights of the other shareholders." We concur in the adoption of these principles for application to such actions.

But it is not made to appear here that there was any collusion between the officers of the New York company and these defendants, and as to the second contract, which was made between these defendants and the Delaware company, of which plaintiff is a stockholder, there is no allegation whatever of any deception or collusion. We think as these contracts were not *ultra vires*, or assailable on grounds of public policy, that they were such as came within the discretionary powers of the board of management to make in the interest of the corporation. Within the limits of the chartered authority, the officers of a corporation have the fullest power to regulate its concerns according to their best judgment. It is true that the powers conferred upon its agents by the charter of a corporation cannot be transcended by any considerations of expediency which they suppose may result to the stockholders from an act not within the scope of their

authority (5 Denio, 567); but these contracts were such as the corporation could legitimately make and consequently came within the scope of the ordinary powers of corporate management.

The conclusions at which we have arrived render further discussion of the questions in this record unneccessary.

The interlocutory judgment overruling the demurrer should be reversed, the demurrer sustained and the complaint dismissed, with costs.

All concur except RUGER, Ch. J., not voting.

Judgment accordingly.