ROBERTS et al. v. NEW YORK & N. E. R. CO. et al.

(Supreme Court, General Term, Second Department.    December 10, 1894.)

CORPORATIONS—POWER OF STOCKHOLDERS TO SUE.
    Where the trustees in a mortgage on railroad property sold the property under a power, and the directors did not redeem, the stockholders cannot, 20 years afterwards, maintain a proceeding to redeem, as their remedy

was to elect directors who would properly perform their duties, and their failure to exercise the remedy for so long a time will be deemed an acquiescence in the conduct of the directors.

Appeal from special term, Kings county.

Action by Richard A. Roberts and others against the New York & New England Railroad Company and the Boston, Hartford & Erie Railroad Company and others. From a judgment sustaining a demurrer to the amended complaint, plaintiffs appeal. Affirmed.

Argued before BROWN, P. J., and DYKMAN, J.

Morrison & Kennedy (L. J. Morrison and E. L. Andrews, of counsel), for appellant.

Tracy, Boardman & Platt and Granville P. Hawes (James R. Soley, of counsel), for respondents.

DYKMAN, J. This is an appeal by the plaintiffs from a judgment sustaining a demurrer to the amended complaint in this action. The action is brought by four plaintiffs, who own 15,300 shares of the capital stock of the defendant the Boston, Hartford & Erie Railroad Company, and they state in their points submitted upon the argument of this appeal that they bring this action to redeem the New York property of the Boston, Hartford & Erie Railroad Company from mortgagees in possession. It appears from the amended complaint that the Boston, Hartford & Erie Railroad Company, on the 19th day of March, 1866, executed a mortgage to three persons as trustees, by which it conveyed all its property to secure the payment of 20,000 bonds of $1,000 each. The company made default in the payment of the interest due July 15, 1870. All the provisions of the mortgage applicable to such a contingency were complied with, and by the lapse of time and the continuance of the default the title to the property became vested absolutely in the trustees. Thereupon the trustees, in obedience to the requirements of the mortgage, organized a new corporation, known as the New York & New England Railroad Company, and conveyed the property which had come to them to the new corporation, which began to operate the railroad in April, 1873. It is the claim and insistence of the plaintiffs that such conveyance by the trustees was unauthorized and illegal, and that the new company obtained no title to the property by virtue thereof; and further, that the old company, or its shareholders, have an equity of redemption in the property, because the legal title thereto is in that company. An admission of the validity of such a contention would admit the invalidity of that portion of the mortgage which provides expressly that after the continuance of the default in the payment of interest for the period of 18 months the whole of the mortgaged premises and franchises shall vest absolutely and in fee in the trustees, without further assurance or process of law, and all right or equity of redemption of the railroad company therein shall be forever barred and foreclosed. The complaint alleges no facts which tend to invalidate the mortgage bonds, the organization of the new company, or the acquisition of the property of the old company. The vague averment that some persons have been actuated by designs more or less fraudulent, with-

out any specification of facts, are quite immaterial. The statement of the belief of the plaintiffs that the old corporation at the time of the default in the payment of interest was in possession of funds sufficient to pay the interest and the operating expenses of the road, and that the default was brought about by the officers in pursuance of a fraudulent design to disrupt the company, is quite too indefinite to constitute a charge of fraud. The complaint is destitute of any charge of fraud sufficient to constitute the basis of any judicial action. It fails to allege any concealment in relation to any of the events or transactions to which reference is made therein. Although the transactions were consummated more than 20 years ago, no reason is assigned for the inaction of the plaintiffs for so long a period of time, and permitting, in their silence, the purchase of the bonds of the new company by innocent buyers.

The examination of the complaint in this action must start with the assumption that it contains no averment of illegal or unconscientious execution of the powers of trustees or directors, or any acts which were fraudulent or collusive or injurious to any rights of the stockholders. It becomes, therefore, only necessary to inquire how far a court of equity will interfere in the suit of a stockholder with the management of the internal affairs of a corporation to coerce the performance or command the nonperformance of acts by directors or trustees where the action or inaction is not tainted with fraud, and it is not beyond the powers of a majority of the stockholders or directors. Such inquiry seems to be fully answered by the opinion of the court of appeals in the case of Leslie v. Lorillard, 110 N. Y. 532, 18 N. E. 363, where it was said:

"In actions by stockholders which assail the acts of their directors or trustees, courts will not interfere unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders. Mere errors of judgment are not sufficient as grounds for equity interference, for the powers of those intrusted with corporate management are largely discretionary."

In this connection the remarks of Judge Comstock in the opinion of the court of appeals in the case of Hoyt v. Thompson, 19 N. Y. 216, are quite appropriate. He there said as follows:

"The board of directors of a corporation do not stand in the same relation to the corporate body which a private agent holds towards his principal. In the strict relation of principal and agent, all the authority of the latter is derived by delegation from the former. * * * But in corporate bodies the powers of the board of directors are in a very important sense original and undelegated. The stockholders do not confer, nor can they revoke, those powers. They are derivative only in the sense of being received from the state in the act of incorporation. The directors, convened as a board, are the primary possessors of all the powers which the charter confers."

Their position is similar to that of town officers, who, though elected by the people, do not derive their authority from those who placed them in office, and are not subject to their direction or control; neither are they the agents of the people nor of the towns. Persons who become stockholders in corporations do so with the understanding, express or implied, that the action of a majority will control the policy of the body. Within the scope of the law, and in

the absénce of fraud, the will of a majority of the stockholders is absolutely controlling, and the minority in interest must submit. If stockholders in all cases could successfully invoke the interference of the courts, then the management of the affairs of corporations could be transferred to the courts at the instance of any one who became dissatisfied with the conduct of the officers. But the rule is plainly otherwise. No action of directors can be coerced, even by a majority of the stockholders. The remedy for mismanagement lies in a change of directors or trustees at the election of the governing body. Here again the analogy to town officers prevails. Such officers may be injudicious or unfaithful, but the remedy lies in their retirement by the electors at the expiration of their official term. Such is also the remedy of stockholders in corporations against officers who fail to discharge their duties judiciously. In this case the plaintiffs complain of the failure of the directors to take measures for the redemption of the mortgage, and whether such action should be taken rested in the sound discretion of the board of directors. If the action of that body was not in accordance with the will of the stockholders, they had the power to change the board, and elect officers who would carry out their wishes. A failure of the majority to take action looking to such change implies acquiescence in the policy of the directors by the majority, and the minority was without remedy, because, as we have already seen, they had agreed to be governed by the majority. The internal affairs of corporations could be successfully administered upon no other theory. Every stockholder in such bodies knows, when he becomes such, that he is to be bound by the action of the majority. This very case illustrates the wisdom of the rule so plainly and generally enunciated by elementary writers and adjudicated decisions. As we have said, whether the property should be redeemed from the mortgage was a question of discretion and judgment to be exercised by the board of directors. There might well have been differences of opinion upon the subject, but its decision rested with the board, and they reached a conclusion which received the acquiescence of all parties for a long number of years. As we have seen, the remedy was by a change in the board of directors by the action of a majority of the stockholders, and that was not pursued. Even now but four stockholders complain, and they only claim to represent a small minority of the stock. They do not claim that the long acquiescence of the stockholders in the action of the governing body and in the transactions which resulted in the organization of the new corporation has been induced by any motives except such as usually actuate men who are mindful of their own interests. Our conclusion is that no case is made by the complaint which will justify the interference of the court for the administration of the relief demanded in the complaint, and the judgment should be affirmed, with costs.