WAYNE–MONROE TELEPHONE CO. v. ONTARIO TELEPHONE CO. et al.

(Supreme Court, Special Term, Wayne County.   September 14, 1908.)

1. TELEGRAPHS AND TELEPHONES—CONTRACTS BETWEEN COMPANIES—PREVENTION OF COMPETITION—PARTIAL RESTRAINT.

Plaintiff and defendant's predecessor were noncompeting telephone companies, occupying different fields; and, each desiring to secure connections in the field of the other, they agreed to connect their line by building an extension to a certain point, and to so operate their lines that each should have service to all points on the lines of the other, the proportion of tolls for messages over the connected lines to be fixed by contract.  The agreement further provided that the parties should not compete with each other in the telephone business, or take subscribers in territory of companies with which the other had contract relations, and should not contract with any other company, etc., so as to impair the privileges secured by the contract.  The parties occupied different fields, and were not the only· telephone companies in their respective fields before the contract, and had no monopoly on the long-distance business thereafter. *Held*, in an action for specific performance of the contract, that the provision against competition during the existence of the contract was only incidental to the main purpose of the agreement to extend the business of the parties, and, being a necessary restriction for the faithful performance of the contract, was not against public policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 10.]

2. CONTRACTS—LEGALITY—RESTRAINING COMPETITION—PUBLIC SERVICE CORPORATIONS.

While courts will closely scrutinize contracts between public service corporations which tend to deprive the public in any degree of the benefits of competition, contracts between such corporations which only incidentally and partially prevent competition are valid, if the main purpose of the agreement is lawful and beneficial to the public, and the restraint is fairly necessary to that purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 547.]

3. CARRIERS—COMBINATIONS OF CARRIERS—AGREEMENT IN RESTRAINT OF TRADE —PARTIAL RESTRAINT.

Common carriers may contract to effect a partial restraint of trade, if the main purpose of the contract is lawful, and the restraint is incidental thereto and reasonably necessary to effect the main purpose of the agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 31, 32.]

4. TELEGRAPHS AND TELEPHONES—CONTRACTS BETWEEN COMPANIES—LEGALITY —PARTIAL RESTRAINT OF TRADE—TRANSFER OF PROPERTY.

A contract between two telephone companies, which only incidentally prevented competition between them, not being contrary to public policy, the sale of the lines of one of them to a third company, whose field of operations made it an active competitor of the remaining company, did not render the original contract invalid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 10.]

Action by the Wayne-Monroe Telephone Company against the Ontario Telephone Company and another.  On demurrer to the complaint.  Demurrer overruled.

Frank E. Young, for plaintiff.

Elisha B. Powell, for defendant Ontario Telephone Co.

Underwood, Storke & Seward, for defendant Empire State Telephone & Telegraph Co.

SUTHERLAND, J.   This action is brought to procure a judgment for the specific performance of a contract made between the plaintiff and the defendant Ontario Telephone Company April 14, 1904, and for damages for the breach thereof.   The complaint states in substance that at the time the contract was made the plaintiff was a domestic corporation, engaged in the operation of a telephone system in the county of Wayne, having its principal office at Williamson, in that county, and the defendant Ontario Telephone Company, a similar corporation, was engaged in the operation of a system of telephones in Oswego county, and had its principal office at the city of Oswego.   The contract referred to recited the fact that the Wayne-Monroe Company had western connections with Rochester, Buffalo, and intermediate points, and desired to extend its service eastward, and that the Ontario Company had connections east and south of Oswego, but desired to extend its service westward; and it was accordingly agreed that the Ontario Company should build a line westward to Fair Haven, in Cayuga county, and that the Wayne-Monroe Company should build a similar line eastward to Fair Haven, at which point a connection was to be made between the wires of the two companies, and it was agreed that on the making of such connection the lines of both companies should be so operated that service should be given from all points located on the lines of one to all points on the lines of the other company, and the proportion of the tolls to be received by each company for messages passing over the connected lines was either fixed by the contract or left to be adjusted thereafter. Each party agreed to furnish the other first-class service.   The life of the contract was to be for five years, and thereafter until one year's written notice should be given by either party to the other of its intention to terminate the contract.   The eighth and eleventh clauses provide as follows:

"Eighth. First party agrees not to compete with second party in telephone business, nor to compete with or take subscribers in territory occupied by exchanges or companies with which second party connects or has contract relations, except upon written consent of second party; and second party agrees not to compete with first party in telephone business, nor to compete with or take subscribers in territory occupied by exchanges or companies with which first party connects or has contract relations, except upon written consent of first party."

"Eleventh. The said parties hereto agree not to enter into any contract with any other person, firm, or corporation, whereby any of the privileges and advantages herein acquired by either party may be impaired."

Immediately on the execution of the contract the plaintiff and the Ontario Company extended their respective lines and formed a connection at Fair Haven, and the plaintiff's business was materially increased as the result of the through toll service to the eastward which the agreement made it possible for the plaintiff to give to its patrons; but in July, 1906, the Ontario Company severed its connections at Fair Haven and refused to further carry out the contract.   The plaintiff claims that great and irreparable injury is sustained by it through the loss of the traffic arrangement with the Ontario Company, and brought this action for a specific performance of the contract and for damages.   When the action came to trial, it transpired that since the

commencement of the action the stock of the Ontario Company had been purchased by the Empire State Telephone & Telegraph Company, and a merger of the Ontario Company with the Empire State Company had been effected, and that the latter company was in possession of the plant of the Ontario Company, and was the only corporation which could, in fact, perform the agreement on behalf of the Ontario Company, whereupon an order was made that the Empire State Company be made a party to the action. A supplemental summons and complaint were served, and both defendants now demur to the supplemental complaint on the ground that it does not state facts constituting a cause of action; and their main contention is that the contract is obnoxious to public policy and contrary to the statutes of the state, being in restraint of trade and tending to create a monopoly, and that therefore specific performance should not be decreed, nor damages awarded for the breach thereof. Clauses 8 and 11, which have been quoted above, are attacked by counsel for the defendants as illegal in this respect, and it is claimed these clauses cannot be severed from the rest of the contract, and that the whole agreement must fall to the ground.

This demurrer cannot be sustained unless it appears from the face of the complaint that the entire contract is void because it unlawfully restrains trade or tends to create a monopoly. In my opinion the complaint does not show the contract to be of such a nature. The original parties to the agreement were not rivals. The complaint shows they were occupying different territory. Neither company withdrew from any portion of its field of operations, nor discontinued any service it was rendering to the public. The connection at Fair Haven gave each company an opportunity to enlarge its business, affording to the Oswego Company western connections which it did not have, and the Wayne-Monroe Company eastward and southern connections which it desired, but did not possess. The Wayne-Monroe Company was not the only telephone company doing business in its territory. The Oswego Company was not the only telephone company in its original field. Neither company had a monopoly in the field which it occupied, nor had the two companies a monopoly of long-distance business after the connection was made. Instead of creating a monopoly, a new long-distance telephone system was instituted by the connection of these two separated local systems, thereby affording the public the benefit to be derived from competition in long-distance business. Viewing the contract as it stood before the intervention of the Empire State Telephone & Telegraph Company, it would appear primarily to be not for the purpose of restraining trade, but for its extension and for the public welfare and convenience.

The agreement does restrain each party from becoming a business rival of the other during the life of the contract; but that restraint is only incidental and contributory to the attainment of the main object of the agreement, namely, an extension of the business of each party through the connection of their two systems. Clauses 8 and 11 only afford to each the security which is reasonable and necessary for the faithful performance of the obligations of agency assumed by the other, and to protect each against the improper use of the knowledge

and instrumentalities placed in the hands of the other by virtue of the contract. Such a partial and minor restraint of·trade, remote in application and agreed to in order to bring about an immediate and relatively larger extension of trade in other respects, with an improvement of facilities for the public convenience, is not condemned by the statutes nor by the common law, as now interpreted and applied by the courts.

It will not be profitable to enter upon an extended citation of the authorities upon this subject. It will suffice to refer to the illuminating discussion contained in the opinion of Judge Taft, writing for the Circuit Court of Appeals in United States v. Addyston Pipe & Steel Co., 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122, in which the distinction is drawn between contracts in general restraint of trade, with that for the immediate object to be attained, which contracts are void and unenforceable at law and very generally pronounced criminal by statute, and contracts, on the other hand, which contain covenants for the partial restraint of trade, that are ancillary only to the main purpose subserved by the agreement, and necessary for the accomplishment and protection of the lawful object sought to be attained, which covenants are everywhere held to be enforceable and not contrary to public policy. Without attempting a complete tabulation of the various kinds of contracts containing covenants in partial restraint of trade which are held to be lawful, Judge Taft, at page 281 of 85 Fed., and page 150 of 29 C. C. A. (46 L. R. A. 122), mentions—

"agreements (1) by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold; (2) by a retiring partner not to compete with the firm; (3) by a partner, pending the partnership, not to do anything to interfere, by competition or otherwise, with the business of the firm; (4) by the buyer of property not to use the same in competition with the business retained by the seller; and (5) by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of service. Before such agreements are upheld, however," he says, "the court must find that the restraints attempted thereby are reasonably necessary (1, 2, and 3) to the enjoyment by the buyer of the property, good will, or interest in the partnership bought; or (4) to the legitimate ends of the existing partnership; or (5) to the prevention of possible injury to the business of the seller from use by the buyer of the thing sold; or (6) to protection from the danger of loss to the employer's business, caused by the unjust use on the part of the employé of the confidential knowledge acquired in such business."

It will be readily seen that the same reason, by force of which the law permits partners, and principals and agents, and other persons sustaining confidential relations to each other, to covenant mutually against a competition in business for the protection of the main object of the agreement of partnership, or agreement of agency, and to prevent the unjust use by one party of the knowledge acquired by the confidential relation thus established, applies with equal force to the traffic arrangement made between these telephone companies. The connection of their lines was certainly for the public welfare, and it was reasonable for them, under the circumstances, to protect themselves from the injury which would result by the use of the instrumentalities and opportunities afforded by the contract for the promo-

tion of a rivalry in business in a manner which never would have been possible but for the agreement to connect their lines. Indeed, under the conditions presented, it would seem to be incompatible with the agency which each assumed toward the other for the transmission of messages that the agent should establish competing lines and seek customers in the same territory in which the other receives its patronage. The tendency would be not to perform the duties of the agency with as great fidelity if the agent had a selfish end to attain in the undermining of the business of its principal. The covenant not to become a competitor in the field already occupied by the other would seem, therefore, to be a reasonable corollary to the creation of this reciprocal agency, and quite essential to its complete and successful fulfillment.

I am not unmindful that the courts must look with keen scrutiny into contracts between corporations holding franchises from the public, exercising the power of eminent domain, and rendering service upon which the public necessarily depends, which tend in any degree to deprive the public of the benefits of competition; but contracts between public service corporations, which involve incidentally a partial restraint in competition, are not obnoxious to public policy, if the main object of the agreement is lawful and beneficial to the public, and the restraint upon competition imposed is only a minor incident and fairly necessary for the accomplishment of the principal object to be attained. Chicago R. R. Co. v. Pullman Car Co., 139 U. S. 79, 11 Sup. Ct. 490, 35 L. Ed. 97. Common carriers are not deprived of the benefit of such contracts. Oregon Steam Navigation Co. v. Winsor, 87 U. S. 64, 22 L. Ed. 315; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456.

The Empire State Company succeeds only to the rights and liabilities of the Ontario Company under the contract. If the contract was good between the parties who entered into it, it cannot become wholly void by the purchase of the lines and properties of one of the parties by a third telephone company, whose more extended field of operation may make the third company an actual rival of the remaining original party to the agreement. Accordingly it is held, in conformity to the views expressed, that the complaint states a cause of action.

The demurrers must therefore be overruled.