## MERRICK *et al. vs.* WEBSTER *et al.*

Where a transportation Company undertook to forward goods from New York to Detroit "by sail on the lake," all dangers of the lake, &c., to be at the risk of the owners, *held* that the contract was restrictive as to the *mode* of transportation, and the company having departed from it, by shipping the goods by *steam* instead of *sail* on the lake, and the goods having been lost on the lake, the Company were liable as insurers to the owners for the value of the goods.

Error to the Wayne Circuit Court.

This was an action of assumpsit, brought by the defendants in error, in the Wayne Circuit Court, against the plaintiffs in error, members of a transportation company, doing business under the name and style of the "*Syracuse and Oswego Line*," to recover the value of certain goods lost on lake Erie.

The plaintiffs in the Court below, declared upon a written contract signed by the parties, in which the defendants below agreed to transport heavy goods for the plaintiffs from the city of New York to the city of Detroit, from and after the 10th day of June, 1852, until the 20th day of October of that same year, " at the rate of twenty-eight cents per one hundred pounds, *by sail on the lake.* All dangers of the lakes &c., at the risk of the owners," &c. The plaintiffs averred that the defendants were common carriers, &c., and that they, under the contract, received a large quantity of groceries to transport for the plaintiffs, but instead of transporting them "*by sail on the lake*," shipped them on the steam propeller " *City of Oswego*," which was by collision with the steamer " *America*," sunk in lake Erie, and the goods lost, &c.

Plea, the general issue.

On the trial of the cause, the plaintiffs proved the execution of the contract, &c., the reception of the goods by the defendants, their shipment on the steam propeller, their loss by the collision, &c., although without any fault on the part of the propeller.

The defendants offered to prove for the avowed purpose of aiding in the construction of the agreement, that the transportation of goods by steam on the lakes, was safer and more expeditious than by sail. That the rates of insurance, and the rates of freight, were higher by steam than by sail; that the rates of freight being equal by both modes, the transportation by steam was in all other respects more beneficial and more desirable by merchants or the owners of goods, and that these distinctions were, and for some years had been, universally recognized by and known to all mercantile and commercial men carrying or having carried goods on the lake.

This testimony was objected to, and rejected by the Court, as irrelevant, to which the defendants excepted.

The defendants then offered in evidence for the same avowed purpose three letters, the first written by an agent of the defendants, and the other two by the plaintiffs to the said agent, and of which the following are copies :

"Oswego, 7th July, 1852.
"*Messrs. S. H. & L. Webster, Detroit, Mich.*

"Gentlemen: I have this day shipped per propeller City of Oswego, eight or ten tons of your goods. They have been here some eight days, and I have tried to get vessels to take them, and none can be found, consequently I have shipped them at the enormous lake freight of almost $3 per ton, which makes our canal freight nothing. Hope you will receive them in time.

"Your ob't servant,

"J. L. Grunman,
"Agent for Syr. & Oswego Line."

"Detroit, July 9th, 1852.
"*Mr. J. L. Grunman.*

"Sir : Your very welcome letter of date July 7th was received this day, saying that you had shipped eight or ten tons of

Merrick *et al. vs.* Webster *et al.*

our goods per propeller City of Oswego. Now, sir, we think and pretend to say, that there is no good reason why you should not have shipped all of our goods long before this. There are daily arrivals from Oswego, and as we find that you will not pay for transporting goods from Oswego to this place, it does not appear strange that they do not arrive. We pretend to say that you could have shipped them long before this, and have several reasons for so saying. Now, sir, you must ship those goods so that we can receive them immediately or you must pay for keeping them. They have now been in your possession thirty days, and you can or should be well aware that that is beyond all reason, and we fear that the goods are now in Oswego. A large portion of our goods are connected with the beer and mineral water business, and cannot be bought at any price in this city, consequently it is a great damage to us. The goods were to be shipped through in twenty days, if the Agent's word is good for anything. If the line cannot ship goods further than Oswego, they should not take the responsibility, for there are other lines that will. People here do not like to be humbugged in such a manner, unless they are paid for it. Hoping soon to receive the goods,

"We remain, yours, &c.,

"S. H. & L. WEBSTER."

"DETROIT, July 19th, 1852.

"*Mr. J. L. Grunman, Oswego:*

"DEAR SIR: We have this day been informed that our goods were shipped on board the propeller City of Oswego, by your order. This was contrary to our contract with the Syracuse & Oswego Line, and without our knowledge or consent. We shall of course hold the said S. & O. Line responsible for the loss. If the goods are lost, the loss has been occasioned by a direct violation of our contract.

"Respectfully yours,

"S. H. & L. WEBSTER."

These letters were also objected to and rejected by the Court as incompetent and irrelevant, to which the defendants excepted.

The Court instructed the jury that by said contract the defendants were bound to transport the goods on the lake in sail vessels, and could not transport them in any other manner: that if the defendants had shipped them by steam, and the goods were lost, the plaintiffs were entitled to recover, to which the defendants excepted, &c.

The defendants' counsel then asked the Court to charge that if the jury should find that if the carriage of the goods on the lakes by steam was more expensive, but on the other hand, safer and more expeditious, and in every respect more desirable for the owners of goods, rates of transportation being equal, than the carriage by sail, that then the true construction of the contract did not exclude the defendants from carrying the goods by steam.

The Court declined so to charge, and the defendants excepted.

*Lothrop & Duffield*, for plaintiffs in error, insisted:

1. That the construction of this contract contended for by the plaintiffs below, was an afterthought, and never contemplated by either party when making it.

2. That some exclusive words, such as "by sail *only*," would be requisite to compel the Court, *ex vi termini*, to adopt the construction which prevailed below.

3. That the contract, correctly interpreted, was *restrictive* upon the carrier as to *price*, and *protective* as to mode of carriage; that is, on the one hand he could not charge over a certain rate, whether he carried by steam or sail; and on the other, he was not *bound* to carry in any other mode than by sail, but he was not restricted to that.

That one principle of construction of instruments, which

governs all courts, is the *intention* or *meaning* of the parties when they entered into it.

The rule most frequently applied, is to look at the situation of the parties, and the subject matter of the contract.

Any extrinsic circumstances tending in any respect to elucidate the meaning of parties, may be regarded. (1 *Greenl. Ev.*, § 287, 288, et seq.; *Wigram on Extr. Ev.*, 58, 59, 138.)

This rule has had an almost infinite variety of applications. (*Sumner* vs. *Williams*, 8 *Mass.* 214; *Whallon* vs. *Kaufman*, 19 *J. R.* 105; *Wilson* vs. *Troup*, 2 *Cow.* 228; *Hasbrook* vs. *Paddock*, 1 *Barb.* 635 ; *Bellinger* vs. *Kitts*, 6 *Barb.* 273; *French* vs. *Carhart*, 1 *Conn.* 486; *Wheelock* vs. *Clark*, 11 *Verm.* 583; *Robinson* vs. *Fiske*, 25 *Maine R.* 401; *Merril* vs. *Gore*, 29 *Ib.* 346 ; *Royalton* vs. *R. & W. Turn. Co.*, 14 *Verm.* 311; *Marion* vs. *Faxon*, 20 *Conn.* 486; *Cow. & Hill's Notes, note* 957, 1402 et seq.; *Ball* vs. *Bruin*, 1 *How.* 169; *Washburn* vs. *Gould*, 3 *Story R.* 162.)

*C. I. & E. C. Walker*, for defendants in error.

1. The testimony first offered by the defendants, was clearly inadmissible from its *irrelevancy*. If admitted, it could have no influence in the construction of the contract.

The contract is unambiguous, and provides *solely* for transporting goods on the Lake by *sail*, and its meaning cannot be varied or explained by parol. (1 *Greenl. Ev.*, §§ 275, 276.)

It is true that the Court may, in construing contracts, and often should, put themselves in the place of the parties, and read it in the light of surrounding circumstances ; but this is solely for the purpose of ascertaining *the true meaning of the words used, and not to add or substitute other words.* (1 *Greenl.*, §§ 277, 282, 287.)

The Court is not at liberty, through the aid of parol testimony, to inquire after the secret meaning of the parties, or with what *intention* the particular words were used; they are simply to find *what the words mean*, in their plain, ordinary,

and popular sense. (*Greenl.* 277, 278, 282, 287; *Wigram on Wills*, 287, *note* 3; 18 *E. C. Law*, 334; *Beaumont* vs. *Field,* 2 *Chit.* 275 ; 24 *E. C. Law*, 163 ; *Templeman* vs. *Martin*, 4 *B. & A.* 771; *Brown* vs. *Thorndike*, 15 *Pick.* 400.)

2. Subsequent declarations of the parties are not admissible for the purpose of giving construction to an unambiguous contract. (1 *Greenl.* § 281; *Horton* vs. *Woodruff*, 2 *Conn.* 153; 2 *Sand. S. C.* 202.)

3. If a carrier contracts to transport goods in a particular manner, or by a particular route, and transport them in a different manner and by a different route, he becomes an insurer for the absolute delivery of the goods. (*Hand* vs. *Baynes*, 4 *Whart.* 204 ; *Dunseth* vs. *Wade*, 2 *Scam.* 285 ; 1 *Sup. Dig.* 250; *Gaither* vs. *Barnet*, 2 *Brev.* 488; *Ackley* vs. *Kellogg*, 8 *Cow.* 223 ; *Wilcox* vs. *Parmelee*, 3 *Sand. S. C.* 610.)

And on the same principle, if a carrier depart from the usual route he is liable for *all* damages. (*Ang. on Com. Car.* 164, 169; *Powers* vs. *Davenport*, 7 *Blackf.* 497 ; *Lawrence* vs. *McGregor*, *Wright*, 193.)

This doctrine is illustrated in the Law of Insurance.

Thus, an unnecessary deviation from the usual course of a voyage, forfeits the insurance of vessel and cargo, although the risk is not *increased*, and even if it is lessened.

The reason is, the risk is *varied*. It is not the one contracted for. (1 *Arnould*, 346–8.)

So, where goods are insured by a particular ship, if the ship is changed without necessity, although the new ship is better and safer than the original one, the insurance policy is discharged, for the risk is varied. (*Ib.* 180.)

By the Court, PRATT, J.

The main question in this case for decision by the Court is, whether the Court below gave a correct legal construction to

the agreement declared on and introduced in evidence on the trial.

It is true, that Courts, in the legal interpretation of contracts, should seek for the real intention of the parties, and for that purpose may, where the language is ambiguous or otherwise uncertain, read the contract in the light of surrounding circumstances, and those legal aids furnished by elementary writers and judicial decisions in analogous cases. But the terms used in an agreement, when clear and explicit, must prevail according to their most comprehensive signification.

"An agreement," says Mr. Chitty, "is to be construed according to its sense and meaning, as collected from the terms used in it, which terms are themselves to be understood in their *plain, ordinary, and popular* sense, unless they have, in respect to the *subject matter*, as by the known usage of trade or the like, acquired a particular sense, distinct from the popular sense of the same words, or unless the context evidently points out that they must, in the *particular instance*, and in order to effectuate the immediate intention of the parties to the contract, be understood in some other special sense."

The rules and legal maxims to be observed by Courts in the exposition of contracts are simple, and have been long well understood. They enable Courts to enforce performance of the terms and conditions of personal agreements, according to the sense in which they were mutually understood by the contracting parties, at the time they were entered into. No recurrence, however, to these rules and legal maxims is necessary in the judicial construction of a contract, which is clear and certain as to the intent and meaning of the parties who are authorized to enter into agreements, for all lawful purposes, with just such terms, conditions and restrictions, as they may deem proper, or agree upon.

The contract in question is clear and explicit, and such as

the parties had an undoubted right to make, and being made they are legally bound by its provisions. This contract is simply an agreement on the part of the plaintiffs in error to forward the goods of the defendant in error, from New York to the city of Detroit, at twenty-eight cents for one hundred pounds, "*by sail on the lake*," and in which the defendants in error agreed to risk the dangers of the sea, &c. On the agreement, it was contended by the counsel for the plaintiffs in error, that this contract is restrictive only as to price, and not as to the mode of carrying the goods. Such a construction would be subversive of the language of the contract, which is not in any respect uncertain. The contract, in terms, is equally restrictive as to the mode of transportation *on the lake*, as it is in the price per hundred. Transportation *by sail* is one mode, and transportation *by steam* is another mode of transporting goods and property. Both are common modes on our lakes, and are as clearly distinct and as definitely understood when applied to the commercial business prosecuted on our inland seas, as upon the ocean; and with this clear and well known distinction before us, which has been recognized for many years throughout the world, it will not do to say, that an unconditional agreement to transport goods "*by sail on the lake*," is not restrictive as to the mode of carrying. The case of Wilcox *vs.* Parmelee, (3 *Sand. S. C.* 610,) is in point. There, as in this case, the agreement was in writing, and by which Parmelee agreed to forward the goods of Wilcox from New York to Fairport, Ohio, for fifty-five cents per 100 lbs. by vessel, and for sixty-five cents per 100 lbs. by steam. Those goods marked "*steam*," to go by steam, and all other goods to be shipped for Buffalo by vessel. The goods in that case were marked to go by steam, but they were sent forward from Buffalo by sail, and in a gale on the lake were lost. It was held that Parmelee, by the terms of his contract, was a common carrier from New York to Fairport, and that he was

liable for the goods lost. This decision of the Supreme Court of New York is sound, and must be regarded as decisive of the case under consideration.

When the plaintiffs in error sent forward, from Oswego, the goods by steam, they violated their own express stipulation, to transport them from that point by sail, and in doing so, they became insurers to the defendants in error, for the safe delivery in Detroit of every article of the property. This is a well established legal principle, founded in justice and equity, and numerous authorities might be referred to in support of it, but such reference is deemed entirely unnecessary, as the principle must be well understood, it being an elementary principle of law, that when a carrier undertakes to carry goods in a particular manner, or by a particular route, and without the consent of the owner transports them in a different manner, or by a different route, he becomes the insurer for the actual delivery of the goods at the place of destination. The plaintiffs below, by the terms of the contract, took upon themselves the dangers of the sea, upon the condition that they were transported " *by sail on the lake,*" and upon no other condition did they assume that risk. And if they, after the execution and delivery of the contract, obtained (as asserted on the argument) an insurance upon their goods to be transported " *by sail on the lake,*" they could not have recovered upon it. The goods having been lost on the lake without any negligence or fault of the master or hands of the propeller, could have made no difference; they were forwarded by a different mode from that represented by the owners to their insurers. Nor can that make the least difference in the liability of the plaintiffs in error under the contract for the transportation. The rule of law is well settled, that when parties have deliberately put their engagements into writing, without any uncertainty as to the object or extent of the engagement, it is a legal presumption which has always been held conclusive, that the whole agreement as well as

the extent and manner of its performance, were embodied in the instrument, and by it the parties are bound. All testimony of previous conversations, or declarations at the time or after the execution of the agreement, are rejected upon the ground that such evidence would tend to substitute a new and different contract between the parties, to the injury of one or the other of them. This law is based upon sound reason and cannot be departed from.

It would indeed be strange, if, under this agreement, the defendants below could voluntarily violate their own express stipulation, to forward the goods by a different mode, by steam instead of sail, and not be liable to the owners for their loss on the lake. They are legally liable, and by every principle of justice should be so held. This view necessarily determines the case. The construction given by the Court below, to the contract, was correct, and the charge to the jury was in accordance with such construction; and it follows, necessarily, as a legal consequence, that the evidence offered on the defence, was for any purpose inadmissible.

The judgment below must therefore be affirmed, with costs.