## MICHIGAN CENTRAL RAILROAD CO. *v.* PERE MARQUETTE RAILROAD CO.

RAILROADS—LEASES—CONSTRUCTION—USE OF ROAD IN COMMON—RESTRICTIONS—RESTRAINT OF COMPETITION—PUBLIC POLICY.

A railroad company granted to another company the right in perpetuity to use in common with the grantor the latter's road, grounds, and appurtenances from the junction of such road with the grantee's road, through S., to E., the proposed easterly terminus of the latter road. The contract provided that the grantee should not receive freight on the common grounds in S. to be transported east of E., or to be delivered to connecting lines at S. or E., nor receive freight from connecting lines east to be delivered at S.; but that, in case of the "construction" of its road eastward of E., there should be no restriction on the business which might be done over such road. *Held:*

(1) That the right conveyed was that of user, and not of ownership, and the relation between the parties was that of lessor and lessee.

(2) That a purchaser of the grantee's road, whose system extended east of E., was not entitled to use the road free from the restrictions of the contract; an extension by purchase not being equivalent to one by "construction."

(3) That, if such restrictions should be held void as against public policy, the whole contract would fall; but that they were not open to such objection.

Appeal from Saginaw; Beach, J. Submitted May 8, 1901. Decided October 1, 1901.

Bill by the Michigan Central Railroad Company to enjoin the Pere Marquette Railroad Company from violating the traffic provisions of a contract for the joint use of premises. From a decree dismissing the bill, complainant appeals. Reversed.

The Saginaw Valley & St. Louis Railroad Company was organized in 1871 to construct, own, and operate a railroad from the city of East Saginaw, which was situated on the east side of the Saginaw river, through the city of Saginaw, which was situated on the west side of the river, to St. Louis, in the county of Gratiot, a distance of 34 miles. The company constructed its road from St. Louis to the junction with the Jackson, Lansing & Saginaw Railroad, at a point about five miles south of the city of Saginaw. The Jackson, Lansing & Saginaw Railroad ran from the point of junction to and through the city of Saginaw, forming a junction with the Flint & Pere Marquette Railway Company's road at a point called the " Y," north of the city of Saginaw. A temporary arrangement was made, by which the Saginaw Valley & St. Louis Railroad Company ran its freight and passenger trains from said junction with the Jackson, Lansing & Saginaw Railroad over that road into the city of Saginaw, and used the station grounds, depots, and stations for the transaction of its business, and it ran its passenger trains into the city of East Saginaw by way of said Y where the Jackson, Lansing & Saginaw Railroad and the Flint & Pere Marquette Railway connected north of the city of Saginaw. This arrangement continued until the 2d of April, 1878. At that date the Jackson, Lansing & Saginaw Railroad, which was being operated by the Michigan Central Railroad Company, was the only railroad running into the city of Saginaw, except the road of the Flint & Pere Marquette Railway Company, which extended west

across the State to Ludington, north to Bay City, and eastward connecting with Detroit.

At that date—the 2d day of April, 1878—the right of the Saginaw Valley & St. Louis Railroad Company to use said track of the Jackson, Lansing & Saginaw Railroad Company from said junction south of the city of Saginaw had expired, and it had become necessary either to make a permanent arrangement for such use, or to itself build a separate road "from the point of juncture to Saginaw, and the point of connection with the Flint & Pere Marquette road, for an eastern connection." To avoid the necessity of building such road by the Saginaw Valley & St. Louis Railroad Company, and in the place thereof to make provision for the permanent use by it of the Jackson, Lansing & Saginaw Railroad, the contract which is the subject of controversy in this suit was made between the Saginaw Valley & St. Louis Railroad Company of the first part, and the Michigan Central Railroad Company and the Jackson, Lansing & Saginaw Railroad Company of the second part, and John N. Dennison and James F. Joy, trustees of the bondholders whose bonds were secured by mortgage of the Jackson, Lansing & Saginaw Railroad Company, of the third part.

The contract recites that the Saginaw Valley & St. Louis Railroad Company had been using the track of the Jackson, Lansing & Saginaw Railroad Company from the junction five miles south of Saginaw, and also the station grounds of the said last-named company at Saginaw, and "the time of its right to use the same had expired, and it had become necessary to make a permanent arrangement for such use, or allow the said company to build a separate road from the point of juncture to Saginaw, and the point of connection with the Flint & Pere Marquette road, for an eastern connection; and *Whereas*, to build another and parallel road, and prepare other station grounds and buildings, when the same track and station grounds are not only adequate, but may be best used by both companies, saving an outlay of capital to the one, and making

available and yielding a revenue to the other, on the property used by it jointly, by as much as is saved to the other in capital or revenue; and *Whereas*, it is doubly for the benefit of all parties that there should be an arrangement for such joint use on proper terms, and equally as much to the bondholders of the Jackson, Lansing & Saginaw Railroad Company as any other party, and possibly much more; and *Whereas*, the said Saginaw Valley & St. Louis Railroad Company has offered for such use, *permanently*, to be paid in cash down, forty thousand dollars, and to be invested in the purchase and cancellation of the consolidated bonds of the Jackson, Lansing & Saginaw Railroad Company, which series of bonds of that company can be bought at the largest discount, thus canceling the largest amount of debt with the money; and *Whereas*, said terms have been accepted by the Michigan Central Railroad Company, lessee of the Jackson, Lansing & Saginaw Railroad Company, and it is clearly for the interest of all parties concerned that the plan should be carried into effect,"—it was thereupon agreed that the said first party pay in cash to the parties of the second part the sum of $40,000 in consideration of the rights and privileges therein and thereby granted and secured by the second and third parties to the first party, and in consideration of said sum said second and third parties did give, grant, sell, and convey to the said first party,—

"And to its successors and assigns, and to the successors and assigns of its railroad, in whatever form the assignment may be made, and to the lessees thereof, without further charge, the right in perpetuity to use in common, except as otherwise provided herein, with the said parties of the second part, or either of them, which may for the time being be in possession thereof, or either of their successors or assigns or lessees, in whatever form the said assignment or leases may be made, all the railroad bridges, superstructures, railroad tracks, side tracks, right of way, switches, turntables, buildings, round-houses, engine houses, freight houses, freight offices, water-tanks and

water therefrom, depots and depot buildings, docks and grounds of the railroad of the Jackson, Lansing & Saginaw Railroad Company, and now owned and occupied by the said second parties, or one of them, and which may hereafter be constructed by either of them, between or from and including the junction of the Saginaw Valley & St. Louis Railroad with the Jackson, Lansing & Saginaw Railroad, south of the Tittabawassee river, to, in, and through the city of Saginaw, and to and including the Y connections and junctions formed or to be hereafter made at the crossing of the Jackson, Lansing & Saginaw Railroad and the Flint & Pere Marquette Railroad north of the city of Saginaw, with the right also to the said party of the first part, at any time, to construct and maintain one or more turnoffs, switches, sidings, side tracks, and main tracks for its road or business, with the necessary switches from the road of the said second parties, at any points which the said first party may choose, for the purpose of extending the road of the first party, or for forming connections with other roads, or for transacting and promoting its business.    *    *    *

"The said first party shall have the right to use for its trains the Y and other connections made, or that may be hereafter made, to connect the Jackson, Lansing & Saginaw Railroad with that of the Flint & Pere Marquette Railroad Company, and to pass thereon with its engines, cars, and tenders from one of said roads to the other. * * *

"In the movement of trains, the trains and cars of each party shall be upon the same footing, and in all respects equal in rights, with the trains of the same class of the other party.    The trains of the said first party which carry mails, also trains having passenger and baggage cars, though freight cars may be connected therewith, shall be classed as passenger trains, and rank as first-class trains, and have the usual right of precedence over the freight trains of either party.    Each party shall make its own time-tables, consulting with the other, so that there may be no conflict between them, with a view to promote and facilitate the movement of the trains of each without interfering with the time of either.    Should it be found necessary at any time by either party, in order to make the proper connections with the trains of connecting railroads, to make time-tables which render the passage of its trains over the common property difficult or inconvenient on

account of the time-tables of the other party, then the necessary side tracks to obviate the difficulty and allow of the passage of trains and secure connections shall be constructed and maintained at the expense of said second party adequate for the purpose.   *   *   *

"Each party may do local freight and passenger business upon the road to be used in common, but the said first party shall not charge less for such business than the said second party, and shall not gather up or receive freight on the common grounds in the city of Saginaw to be transported eastward of East Saginaw, or to be delivered to any roads connecting at the city of Saginaw or East Saginaw; nor shall it do any switching of cars to or from connecting roads at those cities, or either of them, whether loaded or empty, or between the city of Saginaw and East Saginaw, nor receive freight from connecting routes east to deliver at Saginaw City. But this clause and these restrictions shall not be construed to interfere with running its own trains or doing its own business to and from its road south and west of the city of Saginaw to and from East Saginaw, or any connecting railroad at either of said cities with which it may interchange freight or passengers, nor to interfere with the first party in doing any business which it may do wholly on its own road as now constructed, or as it may be hereafter constructed, nor from receiving freight in either of said cities for delivery in the other city which is strictly local freight; nor, in case of the construction of its road eastward of East Saginaw, shall there be any restriction upon the business which may be done over such road.   *   *   *

"Any failure to perform the terms of this contract by either party shall not work a forfeiture of the contract, but such failure shall be compensated in damages."

Upon the hearing a stipulation of facts was made, of which the following is an abbreviated statement, taken from the brief of complainant:

A branch of the road of the Detroit & Bay City Railroad Company was extended to the cities of Saginaw and East Saginaw, and came into the possession of said Michigan Central Railroad Company, and that company has since possessed and operated the same.

About the year 1880, by foreclosure and organization proceedings taken in pursuance of the statutes of this State, the property, railroad, and franchises of the said

Flint & Pere Marquette Railway Company were acquired by and became vested in the Flint & Pere Marquette Railroad Company, which latter company was duly organized under the laws of the State of Michigan, and which company thereafter owned, possessed, and operated the said railroad and railroad lines of the said Flint & Pere Marquette Railway Company. The said Flint & Pere Marquette Railroad Company also afterwards acquired and operated a railroad extending from the cities of Saginaw and East Saginaw eastward to the city of Port Huron, and extended and operated its road to the city of Detroit, and to the city of Toledo, in the State of Ohio.

The defendant, the Pere Marquette Railroad Company, was recently organized under the general railroad laws of this State for the purpose of constructing, owning, and acquiring, by purchase or otherwise, a railroad, and operating the same under and in pursuance of the general railroad law; has become the owner by purchase of the road so constructed by the said Saginaw Valley & St. Louis Railroad Company, with all its rights, franchises, and privileges, and of the said several lines of road so formerly owned by the said Flint & Pere Marquette Railroad Company, including the said road from the city of Saginaw to the city of Port Huron, which there connects with the road of the Grand Trunk Railway Company of Canada, which latter road extends eastward to the city of Buffalo; and said defendant company has also acquired the roads formerly owned by the Detroit, Grand Rapids & Western Railroad Company, and the Chicago & West Michigan Railway Company, respectively, and, in connection with the road which it acquired from the said Flint & Pere Marquette Railroad Company, extending from said city of Saginaw to the city of Ludington, on Lake Michigan, owns and operates steamboats and ferries by which it makes connection with the cities of Milwaukee and Manitowoc, in the State of Wisconsin, and with railroads connecting with said cities. One of the roads acquired by the Pere Marquette Railroad Company from said Flint & Pere Marquette Railroad Company extends to Bay City, and there connects with the road of the Detroit & Mackinac Railroad Company, which extends to the city of Alpena. The defendant, under its purchase from said Flint & Pere Marquette Railroad Company, also possesses and operates as its own a railroad extending northeasterly from the city of Saginaw to Port Austin. The

roads so owned and purchased by said defendant are operated as a system, of which the road so formerly owned by said Saginaw Valley & St. Louis Railroad Company constitutes a part.

Since April 2, 1878, a railroad has been constructed from Bay City through the present city of Saginaw southerly to Durand, where it connects with the railways of the Detroit, Grand Haven & Milwaukee, the Ann Arbor, and the Chicago & Grand Trunk Railroad Companies. It is operated in connection with the said Chicago & Grand Trunk Railroad, and by that means forms a continuous line east and west from Durand, and by said connections at Durand affords means of transportation to the east by way of Detroit, to the south by way of Toledo, and to the west by way of Chicago.

The only stations on defendant's Saginaw-Detroit line reached by complainant's road are Delray and Detroit; on its Saginaw-Toledo road, Wayne, Carleton, and Toledo; on its Saginaw-Port Huron road, Vassar; on its Saginaw-Port Austin road, Reese. On these roads of defendant there are stations reached by no other road.

At the time the contract was made, the Jackson, Lansing & Saginaw Railroad was the only railroad running into the city of Saginaw. The railroad connection between the cities of Saginaw and East Saginaw was by the junction of the Jackson, Lansing & Saginaw Railroad with the Flint & Pere Marquette Railway at the Y mentioned in the contract; and under a temporary, informal arrangement in that regard with the Jackson, Lansing & Saginaw Railroad Company, the Saginaw Valley & St. Louis Railroad Company ran its passenger trains into the city of East Saginaw by the way of said junction. In the city of Saginaw there were and are two depots stationed for the receipt of passengers and freight, belonging to the Jackson, Lansing & Saginaw Railroad Company, at which, under the temporary, informal arrangement mentioned above, passengers and freight were received by the Saginaw Valley & St. Louis Railroad Company. A side track of the Jackson, Lansing & Saginaw Railroad ran, and still runs, from the main line to various mills and factories to reach the business carried on there, and the Saginaw Valley & St. Louis Railroad Company never constructed or used any other railroad between the junction south of the Tittabawassee river and the said junction at the Y north of the city of Saginaw. Said temporary, informal

arrangement was superseded by said contract, and the use of the track of said Jackson, Lansing & Saginaw Railroad Company by the Saginaw Valley & St. Louis Railroad Company was thereafter under and in subordination to the terms of said contract.

Long before the purchase of the Flint & Pere Marquette Railroad Company by the Pere Marquette Railroad Company, said Flint & Pere Marquette Railroad Company had constructed tracks from its main line to many of the industries formerly reached only by said Jackson, Lansing & Saginaw Railroad, to reach the business carried on there.

After the purchase of the Saginaw Valley & St. Louis Railroad and the Flint & Pere Marquette Railroad by the Pere Marquette Railroad Company, a connection was made between the Jackson, Lansing & Saginaw Railroad and the Belt Line of the old Flint & Pere Marquette Railroad Company's road at a point south of the depot of the Jackson, Lansing & Saginaw Railroad Company, situated in the old city of Saginaw, now Saginaw, West Side, and since some time about June 1, 1900, all of the passenger trains and most of the freight trains of the Pere Marquette Railroad Company operated over the road of the old Saginaw Valley & St. Louis Railroad Company have been operated over the Belt Line, and none of the passenger trains of the Pere Marquette Railroad Company now stop at either of the depots in the city of Saginaw of the Jackson, Lansing & Saginaw Railroad Company.

The bill alleges that it is the intent of the defendant to gather up freight for transportation eastward from the city of Saginaw and East Saginaw, or to be delivered to the roads so formerly owned by said Flint & Pere Marquette Railroad Company; that such conduct is in violation of the agreement; and prays that the defendant be enjoined from so doing.

The defendant sets forth its contention in its answer as follows:

" This defendant respectfully contends that it was contemplated by said agreement of April 2, 1878, that thereafter the owner of the said Saginaw Valley & St. Louis Railroad would or might also own a railroad extending east beyond the cities of Saginaw and East Saginaw, and in this manner a continuous line of railroad be owned and

operated by the same railroad, which company might be either said Saginaw Valley & St. Louis Railroad Company or some other company which should, from or under said Saginaw Valley & St. Louis Railroad Company, become the owner and possessor of the said railroad of said last-named company, and of the rights and privileges granted to said company by said agreement; and it was not the intent or purpose of said agreement to prevent or forbid said railroad company owning or operating such continuous line of railroad from gathering up, accepting, or receiving freight upon said common ground mentioned in said bill of complaint for transportation, and from transporting the same, over said continuous line of road to the east of said cities, but, on the contrary, it was the purpose and intent of said agreement to provide for and permit the gathering up, accepting, and receiving such freight on said common ground for transportation and to be transported over said line of railroad to the east of said cities; and this defendant respectfully submits that said agreement does permit and provide therefor.

" This defendant claims that it has the right, and that under the laws of this State it is its duty, to accept whatever freight shall be tendered to it at the proper places for receiving freight upon and along the portion of railroad which is the subject of controversy in this suit, being that portion of railroad described in said agreement of April 2, 1878, leased to said Saginaw Valley & St. Louis Railroad Company, for transportation by this defendant over any of its lines of road; and that said agreement cannot properly be construed to prevent or prohibit this defendant from accepting and receiving such freight, and transporting the same over its lines of road to the eastward, or in any direction in which its lines run; and this defendant respectfully submits to this court the determination of its rights and duties in the premises."

Decree was entered dismissing the bill.

*Watts S. Humphrey* (*Ashley Pond*, of counsel), for complainant.

*Benton Hanchett*, for defendant.

GRANT, J. (*after stating the facts*). 1. It is first urged on behalf of defendant that by the contract of April

2, 1878, that portion of the Jackson, Lansing & Saginaw Railroad covered by it was made a part of the road of the Saginaw Valley & St. Louis Railroad Company, and that it was the design and intent of said contract to make that portion of the Jackson, Lansing & Saginaw Railroad take the place and stand in the stead of the road which, by its articles of association, the Saginaw Valley & St. Louis Railroad Company was to construct between St. Louis and East Saginaw.

Whether the Saginaw Valley & St. Louis Railroad Company had complied with its charter by making this arrangement is a question not before us. This question cannot be raised in a collateral proceeding. It could be raised and determined only in a proceeding brought by the State to determine whether that railroad corporation had complied with its charter. The State has not seen fit to raise the question, and very naturally, because probably the rights of the public have been as well subserved by the contract made between the two roads as they would have been by the construction of a separate road. The rights of the parties must, therefore, be determined by the contract which they voluntarily made. The situation was this: The Saginaw Valley & St. Louis Railroad Company desired to avoid the construction and maintenance of a separate road for a distance of five miles, and as well the construction of separate depots and the purchase of depot grounds. It must do this or make a contract with the Jackson, Lansing & Saginaw Railroad Company. The former could not compel the use of the latter's road and depots. The latter was willing to grant a permanent use of its road to the former for certain considerations. These were agreed to. The Jackson road did not sell to the Saginaw Valley road any of its real estate, but granted only a permanent lease. To hold otherwise would be doing violence to the meaning of the plainest terms. The Saginaw Valley road was under no obligation to continue the arrangement, but might at any time construct its own road; and there is nothing in the contract to prevent it.

The relation between the parties was simply that of lessor and lessee, and not that of tenants in common of the right of way. The right conveyed was that of user, and not that of ownership.

2. It is next urged that the defendant complied with the terms of the contract by the purchase of the Saginaw Valley & St. Louis Railroad; that the extension of the Saginaw Valley road was the main thing provided for in the contract; and that the purchase was equivalent to a construction. Such an interpretation would also do violence to the plain meaning of language. The persons who prepared and executed this contract on behalf of their respective corporations were men of education and intelligence. They are presumed to have used words in their ordinary and popular sense. *Merrick* v. *Webster*, 3 Mich. 274. Words may sometimes acquire a particular meaning according to the usages of trade, or the peculiar context in which they are used. Such is the case of *Seymour* v. *City of Tacoma*, 6 Wash. 138 (32 Pac. 1077), where "An act authorizing cities and towns to construct internal improvements, and to issue bonds to pay therefor," was held to include the purchase of waterworks and light plants which had been erected by private enterprise. The ordinary definition of the word "construct" is there recognized; but, when the object to be attained and the language of the act were considered, it was held that the legislature intended something more than the construction of waterworks, and conveyed the right to municipalities to purchase waterworks already in existence, and necessary to carry out the purpose of the law.

It is impossible to read this contract without reaching the conclusion that the word "construct" was used in its ordinary and popular sense. The contract referred to the road of the Saginaw Valley & St. Louis Railroad Company "as now constructed, or as it may be hereafter constructed." It was clearly understood that the road was only constructed from St. Louis to its junction with the Jackson, Lansing & Saginaw Railroad, five miles from

Saginaw.   If the Saginaw Valley & St. Louis Railroad
Company had let a contract for the construction of its road-
bed from St. Louis to Saginaw, paralleling the roadbed of
the Jackson, Lansing & Saginaw Railroad from its junc-
tion to Saginaw, would the contractor have complied with
his contract for its construction by making an agreement
with the Jackson, Lansing & Saginaw Railroad Company
by which its roadbed could be used in the same manner,
and for the same purposes, and to the same effect as if it
constructed its own roadbed?   Or would the contractor
have performed his contract by purchasing this five miles
of road from the Jackson, Lansing & Saginaw Railroad
Company, and turning it over to the Saginaw Valley & St.
Louis Railroad Company ?   If the owner of a manufactur-
ing plant buys an adjoining plant used in the same busi-
ness, does he, by his purchase, construct the plant pur-
chased ?   To purchase does not mean to construct.   This
case falls rather within that of *Lamb* v. *Anderson*, 54
Iowa, 190 (3 N. W. 416, 6 N. W. 268), where it was held
that the purchase of another line of railroad was not a
construction, so as to justify the collection of a tax voted
by the township for the construction of a railroad.

It is significant that the Saginaw Valley & St. Louis
Railroad Company, at the time the contract was made,
had obtained no right to construct its road to the east-
ward.   Its eastern terminus was East Saginaw.   It could
not extend its right of way farther without amending its
charter, and establishing that a public necessity existed
for the extension and construction of the road eastward.
In that proceeding any one interested would have the right
to appear and contest such extension.   The Jackson,
Lansing & Saginaw Railroad Company might well agree
to incur the risk of an extension by construction, where it
would be totally unwilling to incur the risk of a purchase.
Construction is defined to be "the act of building or mak-
ing; the act of devising and forming; fabrication."   Cent.
Dict.   It is in that sense that the term was used in this
contract.

3. It is next urged that, under the complainant's construction of the contract, it is void as against public policy, in that it illegally restricts the Saginaw Valley & St. Louis Railroad Company from receiving and shipping freight. It would seem a sufficient reply to this to say that there is no restriction by the contract to carry freight over its own road. Its entrance into Saginaw from the junction with the Jackson, Lansing & Saginaw Railroad was one purely of contract. Its own road was in fact constructed only to the junction. It then had two ways open to it,—either to construct its own independent road into Saginaw, or make a contract with the Jackson, Lansing & Saginaw Railroad Company. It chose the latter. The contract which it made must either stand or fall as a whole. *Alford* v. *Railway Co.*, 3 Interst. Com. R. 519. If the objectionable provisions are absolutely void, then the contract must utterly fail. Without these provisions the Jackson, Lansing & Saginaw Railroad Company would undoubtedly never have made the contract. This court cannot make one for it. If the contract is entirely void for this reason, complainant, as stated by its counsel, has no objection to such a decree; for this would leave the defendant without any right whatever over the complainant's road.

It is conceded that a railroad company cannot enter into a contract to incapacitate itself from discharging the duties resting upon it. This, however, is far from holding that railroad companies may not enter into such an arrangement as was made in this case. There is not a word in the contract which limits the duty of either of the three roads to receive freight for transportation, or which restricts the right of any shipper to have his freight carried by either road. The Saginaw Valley & St. Louis Railroad Company expressly retained the right to ship eastward if it should construct its road in that direction. It had no connection east of Saginaw, and none was provided by its charter. The restriction in regard to picking up freight for the East was aimed solely at the Flint & Pere

Marquette road, which was then in existence, and had a line running eastward from East Saginaw. It was the only competing line then in existence. The contract was aimed at it, and nothing else. No public policy and no statute were attacked by this provision. The Flint & Pere Marquette had its own road and station grounds in Saginaw. Any citizen of Saginaw could ship freight from or receive freight at its depot. The same facilities were offered by the Jackson, Lansing & Saginaw Railroad Company. The public had two competing lines, and could, at its choice, deal with either. That right was not interfered with by this contract. The Saginaw Valley & St. Louis Railroad Company, by the contract, was permitted to run its cars to the junction of the Flint & Pere Marquette Railway at the Y north of the city. This was for the accommodation of the former company. It is now claimed that the present defendant, which has bought the Flint & Pere Marquette and other roads, obtained the very right which the Saginaw Valley & St. Louis Railroad Company contracted not to exercise, and which it did not exercise for a period of 22 years. We think this claim cannot be maintained. The Jackson, Lansing & Saginaw Railroad Company had the right to stipulate that the other road should not use its depots and grounds to pick up and deliver freight to its only competitor, the Flint & Pere Marquette Railway Company, and in doing so violated no rule of public policy or statute of this State. Contracts between railroads, more restrictive than this one, have been sustained. *Union Pac. R. Co.* v. *Chicago, etc., R. Co.*, 163 U. S. 564 (16 Sup. Ct. 1173); *Chicago, etc., R. Co.* v. *Denver, etc., R. Co.*, 143 U. S. 596 (12 Sup. Ct. 479). As was said in *Leslie* v. *Lorillard*, 110 N. Y. 519 (18 N. E. 363, 1 L. R. A. 456):

"The apprehension of danger to the public interests should rest on evident grounds, and courts should refrain from the exercise of their equitable powers in interfering with and restraining the conduct of the affairs of individuals or of corporations, unless their conduct, in some tangible form, threatens the welfare of the public."

Decree reversed, with costs of both courts, and decree entered for the complainant.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. LONG, J., did not sit.